The next case, number 221081, Sergio Rodolfo La Parra De Leon v. Merrick B. Garland. Attorney Sanchez, please go ahead and introduce yourself at this time to begin. Yes, good morning. This is Attorney Lydia Sanchez for the petitioner. May it please the Court. Mr. Sergio La Parra De Leon was issued an absentia order by the Boston Immigration Court sometime in 2010 when he failed to appear. This case first started when Mr. De Leon was arrested during a workforce enforcement raid in 2008. At that point in time, he was taken to the ICE office in Warwick and issued an NTA, Notice to Appear. During his interview, he was provided in person a Notice to Appear, but the Notice to Appear did not contain the date and time of the hearing. So, as you know, in Parra, in 2018, Parra decided that the NTA that lacked the date and time could not stop the time for a respondent to accumulate the 10-year residency to apply for cancellation of removal. Then came, in 2021, the Supreme Court decided in Chavez v. Garland, the same issue of the Notice to Appear. But in that case, the Supreme Court, Justice Gorsuch, extensively looked into the background of the Section 1229A, which is the commencement of proceedings for a person to be put in proceedings for the NTA, the Notice to Appear. In that case, Judge Gorsuch indicated that the NTA that did not include the date and time of the hearing was not a proper NTA. The Court indicated, engaged in an extensive analysis of Section 1229A that included that the language of the Notice to Appear was to be contained in a single document. So, in other words, when Congress made the Section 1229A, it included certain things that have to be contained in the Notice to Appear. The allegations are contained in the Notice to Appear. For example, is a person a native and citizen of the United States? Is the person what country is he from? And it also contains the charges of removability. It contains the court location where jurisdiction lies. And also, it should contain the date and time of the hearing. Of course, the problem arises that the government, in most instances, has not indicated a date and time on the Notice to Appear. In fact, the government indicates in one of their briefs that 100 percent of the time they have not included the date and time. I, myself, as a practitioner, have not seen a lot of NTAs with a date and time. And most of them do not contain a date and time. Except after Pereira and Nick Chavez, the government has been attempting to put the Notice of Date and Time on their Notice to Appear. The term itself, Notice to Appear, which is the charging document after post-IRA-IRA, indicates that there should be a notice given to the respondent, or petitioner in this case, or any petitioner, to appear in court. So, in other words, the petitioner should know when he has to come to court. If you're being provided a hearing date, for example, today, we were notified that September 7th at 9, we were supposed to be here for a hearing on the oral arguments on our cases, all of us. But if we just received a notice, oh, we're going to schedule a hearing notice on oral argument, but did not provide a date in which to appear, we would not know that. So, in this case, Mr. Pereira, Mr. de la Parra, did not receive a hearing notice to actually appear in court until almost two years later. And that hearing notice was provided to him at his last known address, which the record shows it was undeliverable, it was returned to the court, and he did not receive the date of that hearing notice, which was for, I believe it was sometime in April of 2010. So, it was the immigration court in Boston which sent that notice of hearing, and he did not receive. That is the subject of this petition to review. The in absentia order that came out of that hearing in 2010 at the immigration court that Mr. de la Parra did not appear to, because he did not receive the notice required. In Nick Chavez, the court referenced the section 1229A, the notice to appear, and the Supreme Court indicated that it not only applied to the stop time rule, but it also applied to the in absentia context. In absentia, let's see if we can get to the issue here. The government's position is that Nick Chavez and Pereira applied to the stop time rule, but the language concerning in absentia removal statute is a little different. It refers to written notice, and it makes specific reference using the disjunctive or, the subsection one and subsection two, and tell us what's wrong with the government's argument. Well, what's wrong with the government's argument, of course they agree with the BIA that decided that. What's wrong with the government's argument is that under the failure to appear statute, any alien who after written notice required under paragraph one or two of section 1229 of this title, and does not attend a proceeding, shall be order removed. But what's wrong with that argument is under paragraph one, Congress delineated the notice to appear requirements. It's just one writing rule, and I understand under subparagraph one. That's what you just said, one or two. And the government says, yes, but we gave the notice of two for this. So what's wrong with that argument? Well, what's wrong with that argument is because you cannot have a subsequent notice to issue by the court when you never had an initial hearing scheduled under the notice to appear. Under section two, it just tells you that the court will reschedule or change a hearing. But there was never an initial hearing scheduled in this case.  Because under section two, it's just a notice of hearing, not a notice to appear under one. And since Mr. De La Parra was never issued a proper NTA with a date and time, therefore we cannot go on to section two, which would be a postponement or a change of the initial hearing when there was never an initial hearing. If that was the case, then Congress would have said any alien who has a written notice shall be deported if he fails to appear. They would not have made a distinction under paragraph one or paragraph two. It's two different sections. And since the original NTA did not have a date, the court in itself cannot schedule an initial hearing because that is not delineated under the statutes. Otherwise, the statute itself says that it's a change of an initial hearing, a change or postponement, whatever you want to call it. But it cannot be a change of what? What are we changing if we never had an initial hearing to begin with? And that is the problem here. The BIA wants to interpret the statute on its own way. We know that Singh v. Garland and Rodriguez v. Garland, recently decided by the Fifth and the Seventh Circuit, completely disagree with that proposition that a notice under two, if you never received an initial hearing date, it's adequate for an abstention order. So that is what's wrong with this argument, Judge Celia. Thank you. Thank you. That's very helpful. I'm sorry? Judge Celia, you didn't come through that clearly with that last statement. I said thank you. That's very helpful. You came through fine then. Okay. In Nick Chavez, the court specifically engaged in an analysis of 1229A, and we argue that 1229A can be considered in the absentia context. So those requirements are needed to have a valid in absentia order against the respondent or any respondent. In Singh v. Garland, which is persuasive authority from the Ninth Circuit, the court indicated that they referenced this case of La Parra, and they indicated that the BIA recently adopted the government's argument in matter of La Parra, but they were not, that court, the Ninth Circuit was not persuaded by the government or the BIA that the word or in 1229AB5A displaces the Supreme Court's interpretations of notice to appear in Pereira and Nick Chavez. The court indicated in that case that the plain text, the statutory structure, and common sense command otherwise. In the context of in absentia orders, it is more importantly that we look at the plain meaning of the statute and what Congress meant because in this particular instance, the petitioner never had a hearing in court, and he would have shown up, assumed that he would have shown up if the initial NTA had been provided to him. Can I just ask you about that because I understand the textual argument you're making and how it follows from the two recent Supreme Court cases, but isn't the consequence of that argument that if the petitioner had received the second document and the second document said, show up 9 o'clock, September 6th, and he failed to do so, petitioner would still win, right? If the notice to appear was compliant? No, if the second document didn't have all the things a notice to appear needs to have, but just said, show up X date and time, and he had received it, but he didn't show, wouldn't you still win? He would still be able to file a motion to reopen in absentia. You misperceived the question. If there was a deficient notice to appear, but if the hearing notice gave all the information that was required, would you still win on the prior right to show up? Well, not according to the BIA. No, but according to you. I'm talking about according to the Supreme Court. Yes, of course, and that's exactly what the Supreme Court is saying. Yeah, so I'm just saying it happens in your case, you're contesting whether he received the second notice, right? No, in our case, we're contesting that the NTA was not a valid petition. Is there no argument about whether he actually received the second notice? He didn't receive the second notice. That's what I'm saying, but the logic of your argument is that even if he did receive the second notice, he'd still win. He would still win because assuming that the NTA was not compliant, because the initial NTA was not a problem. I'm not disagreeing with that. I'm just saying I just wanted to make clear the ground you're asking to win on has that consequence. Yes. That effectively a petitioner would be free to ignore the second notice as long as the first notice was defective. Well, he wouldn't be free to ignore the second notice if he received it. If he received it, he cannot just go and ignore a hearing notice from the court. On your theory, he can because he's never gotten notice if the first is defective. Yes, but you just do not ignore a notice of hearing. You show up in court and make your argument. We seek to terminate. If you did ignore it, you would not be subject to removal and abstention, correct? On your theory. Well, you still have to make an argument for termination because the NTA is deficient and not compliant. But if he received the notice. I just said you wouldn't be subject to removal and abstention on your theory. That's all. Yes. Okay. He wouldn't because he would show up. No, if he didn't show up. Okay, but if he received it, you know, then he would not and doesn't show up for whatever reason. He would have to explain why he did not show up. Well, wouldn't his explanation be I never got an initial notice that wasn't defective, so the second notice doesn't make me have to show up. In this particular case, that's not factually accurate because he did receive the notice to appear in person. No. Some notices to appear are mailed, and you can make the argument that he didn't receive the mail, but in this particular instance, in my client's case, he was personally served with the NTA. Thank you. Am I out of time? Anything further? Judge Selya? No, I'm okay. Judge Howard? Thank you. Thank you. At this time, would Attorney Fitzgerald Sambu please introduce herself on the record to begin? May it please the Court. Elizabeth Fitzgerald Sambu on behalf of Respondent. In this immigration case, petitioner failed to appear at his initial removal hearing and was ordered removed. And here, the in absentia statute provides that as long as petitioner was served with notice under Paragraph 1 or Paragraph 2 of 8 U.S.C. 1229, then the immigration judge was required to order him removed. So here, petitioner did receive the notice. Notice under Paragraph 2 can occur unless there is proper notice under Paragraph 1. It has to change to a non-existent hearing date and may not be a postponement of an invalid hearing date. So why doesn't the Ninth Circuit, Judge Hulme, the Ninth Circuit, and the Fifth Circuit, Rodriguez, have this exactly right? Right. So I have a lot of points to respond to that. So first, in 8 U.S.C. 1229, which lists the NTA or notice to appear under Paragraph 1 and then the change or the notice of hearing basically is what's sent under Subsection 8.2, there the statute itself references each one as written under Paragraph 1. It says that's a written notice. It describes Paragraph 1 as a notice to appear. And then in Subsection 2, it describes that as a written notice and then discusses if there's a change. What do we have at Paragraph 2? Paragraph 2 says that it governs changes or postponements. Correct, Your Honor. I don't understand how you can change something that legally doesn't exist, that legally is a notice. Okay, so the notice to appear does include some language. I think the issue essentially is does a notice to appear that says the date and time are to be set and then a later specified date and notice of hearing, whether that counts as a change. If so, then our argument is correct. So there are a few things. So in that Subsection 8.2 of 1229, the statute says any change or postponement. So as the Supreme Court has repeatedly reiterated as recently as Patel in this past year in an immigration case, that the word any shall be construed broadly. It's supposed to include many things and be construed broadly in statutory interpretation. Additionally, the word change, if you just go straight to the dictionary definition, which the Supreme Court has held is what this or what courts should be doing in statutory interpretation, if you look at the definition of change, it includes many things. It doesn't restrict it to the meaning that petitioner is urging here. What's the hearing that's being changed? Well, essentially the change is the to-be-set language to the specified hearing information like the date and the time. That's not quite the question I asked. It says change to a hearing, right? It says change in time and place. Let me see. Of a hearing? Sorry, let me see. Wrong one. Let's see. Of the proceedings. So the language from subsection A2 is in the case of any change or postponement in the time and place of such proceedings. Okay, such proceedings are the proceedings. The removal proceedings. So I think this is referencing proceedings in general, and then if you look at the in absentia statute, it's referencing the relevant proceedings. And so the proceedings they have in mind, that you have in mind, are the proceedings that are set forth in the defective notice to appear? Yes. Well, the notice to appear is sort of, it initiates the proceedings. It's defective. It doesn't when it's defective, right? That's the whole point of the two cases. Well, no. Respectfully, no. So this court has held, and courts throughout the country have held, that at least as far as immigration judge jurisdiction, that the proceedings can still continue. So the immigration judge does still have jurisdiction. You know, in all cases where individuals did actually appear. Only when there was ultimately a notice to appear was given, right? No. So basically in all cases where individuals are not ordered removed in absentia, their proceedings still occur even when the notice to appear omitted the time and date. In all those cases, the person actually does show up, and then they're ultimately ordered removed, and they have no remedy to challenge it based on sort of a defective notice to appear. So your contention is that the notice to appear isn't defective. I mean, isn't defective in the sense of nonexistent. It's just ineffective for purpose of the stop time point only. Yes, exactly. And therefore, two can be understood as changing or postponing the notice to appear. Correct. Yes. So only in exactly in that limited stop time context where the statute in the stop time rule itself says, a notice to appear, and it references the notice to appear itself. Because, and you're saying if we held otherwise, that would put pressure on our post parade cases saying that the proceedings can continue even absent a notice to appear that would comply with the stop time rule. Yes, essentially. So the jurisdiction portion is based on the regulation. But essentially, if you look at sort of common sense, then yes, it does conflict. Because basically, this court would essentially be holding to everyone who actually did appear and obeyed their notice. Their removal orders stand, while only the in absentia ones where they failed to appear are now able to be reopened, essentially. And the other thing is that Ms. Chavez actually supports our argument. So there, the Supreme Court was interpreting the term a notice to appear under 1229. And there, the Supreme Court emphasized that only Paragraph 1 relates to a notice to, or sorry, yes, a notice to appear. So because the stop time rule itself, that statutory section, references a notice to appear, that's why the Supreme Court was then looking to Paragraph 1 to see, you know, whether all that information had to be in one document for purposes of stopping the time for cancellation of removal, relief from removal. But here, the in absentia statute is different than the stop time rule. It says one or two. The statute doesn't say in the in absentia section that, you know, notice is defective under two if it was defective under one. So basically, that's what the Ninth Circuit held in Singh. So there, the Ninth Circuit completely overlooked that Paragraph 1 and Paragraph 2 each describe themselves as a separate written notice. And additionally, in Ms. Chavez, the Supreme Court did say that those are two separate notices. So I think it does boil down to, or this Court's decision will boil down to, whether a change in time or place of proceedings could be that sort of to be set, as in the NTA, to the specified date and time. And one point that I don't believe I argued in the brief, but that's relevant, is that any change or postponement language that this Court will have to interpret was actually added into the statute by Congress in 1990. And at that time, there was no requirement that the notice to appear include a date and time. Just remind me how it works. When there is a notice to appear that doesn't have the information that is necessary for the stop time rule to kick in and the proceeding occurs. Correct. Petitioner then contends there's no jurisdiction because it was an ineffective notice to appear. We have many cases saying, no, we don't agree with that. Correct. What has happened in those cases? This is just a practical question, which I forgot. What has happened in those cases that enabled the petitioner to know to show up for the proceeding? Because they received this notice of hearing under Paragraph 2. They got the notice of proceeding under Paragraph 2. Exactly. So I think the reason why this may be confusing is because, you know, it's just so obvious that everyone who receives, even if they had, basically the government hasn't been serving, you know, a compliance notice to appear for decades. So what petitioner is now arguing is that in all these cases where an individual is ordered removed in absentia, this court can now sort of open the door for all those people to reopen their proceedings and have sort of a second chance, which is something that all the people who did appear for their hearings and were ordered removed don't have. But in the ordinary cases, our cases dealing with the jurisdictional issue, what provision of the statute have we been dealing with where we've said that that second notice suffices to give jurisdiction? What provision of the statute authorizes that conclusion? So in the jurisdiction cases, the statute is actually silent. So it's only a regulation that is specifying, you know, when immigration judge jurisdiction is set forth. And there the regulation says it's, you know, regardless of whether the notice to appear was, you know, sufficient or not. So that's why in those cases, this court is then looking at the regulation with a silent statute. But here, in contrast, the statute... So the difficulties of a version of your argument would be we know from those cases, and we have to take them as correct, that Congress doesn't actually treat the notice to appear as a nullity when it has the features lacking, the things that would make it effective for purposes of the stop time rule. Right. Like, I think basically because... And therefore, we treat the second, the change or postponement notice as affecting a change or postponement. So your argument is if you do it there, why wouldn't you do it here? Is that the idea? I think essentially, and the reason why it's complicated is because there's no statutory section specifying exactly what this change is. So it's sort of just assumed that that is a change, and that's just how things function in practice. But there's no sort of statute saying that someone who did actually appear and was ordered removed can then reopen based on this issue. It's only because the in absentia statute here specifies Paragraph 1 or 2, that now petitioners are able to sort of argue that Pereira and De Chavez support their argument, and that, you know, the notice to appear does make a difference to their case. But yes. So let's see. Another point that we didn't actually make in the brief that's relevant is that... addressed how their reasoning here fits with what I take to be... I assume they have the same precedent we do about the jurisdictional point. Yes. So essentially, the Ninth Circuit did have matter of... or excuse me, it had matter of lapara before, and the government briefed matter of lapara's interpretation, not as in-depth, I think, as in this case. But their one issue with the Ninth Circuit's decision is that they misconstrued what matter of lapara said. So essentially, prior to matter of lapara, the board would often sort of rely on this sort of pre-Niz Chavez idea that the NTA could be cured by a later served notice of hearing, and therefore, in general, everything's good under 1229A without specifying whether it's Paragraph 1 or 2. But in matter of lapara, the board clarified its interpretation in the in absentia context, and, you know, the board admitted that, you know, a notice to appear under Paragraph 1 isn't sufficient to order someone removed if that's the only notice that they receive. So essentially, what the Ninth Circuit did in saying is that they interpreted the matter of lapara decision as relying on this old curing theory that basically cobbled it together and its notice in general. So then you have the Ninth Circuit saying, well, 1229 as a whole is this one big section that's all a notice to appear. So therefore, they're applying the Supreme Court's Paragraph 1 notice to appear analysis to sort of 1229A in general. Just to repeat my question, does either the Ninth Circuit or the Fifth Circuit address this jurisdictional point that you're making? Because if I understand the course of your argument is that the logic of petitioner's position, if we accepted it, is hard to reconcile with our jurisdiction cases post-rare. I don't believe it was argued by the government in those cases. I would have to double check, but I don't believe so. And one other point about the Fifth Circuit, too, is that in Rodriguez, in that decision, the board had relied on this sort of like curing theory that's now defective, post-Ms. Chavez. And the other thing is that even though the Fifth Circuit denied en banc rehearing in Rodriguez, they did so on a sua sponte call for rehearing, and there was no briefing on this matter of lapara interpretation. So there in Rodriguez, they didn't even receive the board's sort of nuance-corrected interpretation of the statute. But if there are no further questions, then thank you so much. Thank you, Attorney Fitzgerald Sembu. At this time, I believe that concludes argument for this case.